# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### DELTA DIVISION

ROOSEVELT and GLORIA JONES                 **PLAINTIFFS**

**v.**                                      **CAUSE NO.: 2:06cv57**

**JAMIE REYNOLDS, et al.**                      **DEFENDANTS**

<u>MEMORANDUM OPINION</u>

Comes now before this Court, Defendant American National Property and Casualty Company's ("ANPAC") Motion to Strike Plaintiff's Designation of Donald L. Dinsmore and to Exclude Expert Opinion Testimony. Also in front of the court is the Defendant's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment. After reviewing the motions, responses, rules, and authorities, the Court makes the following findings:

*Factual and Procedural Background*

On September 29, 2004, Gloria and Roosevelt Jones (the "Plaintiffs") submitted an application for homeowners insurance to ANPAC. In the application documents for that insurance policy, the Plaintiffs answered "no" when asked whether any member of the household had ever been convicted of a felony or drug possession. ANPAC issued a homeowners insurance policy to the Plaintiffs on September 29, 2004, numbered 23-H-U85-746-7.

On February 27, 2005, the Plaintiffs' home was completely destroyed by fire. The Plaintiffs reported the loss to ANPAC, and ANPAC initiated an investigation into the cause of the fire. Burn markings on the floor of the home and two samples from the Plaintiffs' home which tested positive for ignitable liquid lead ANPAC's investigators to deem the blaze of February 27, 2005, an "incendiary fire." ANPAC engaged in a further investigation to determine the identity of the arsonist prior to disbursing the insurance proceeds to the insureds.

ANPAC required the Plaintiffs to submit a signed Proof of Loss and submit the necessary forms. The original Proof of Loss was incorrectly submitted, according to the insurer, and ANPAC requested the Plaintiffs complete another form. ANPAC received the revised Proof of Loss on May 16, 2005. ANPAC then requested that Gloria and Roosevelt Jones individually submit to an examination under oath and provide documents necessary for the investigation. Those examinations were performed on June 15 and 16, 2005. ANPAC asserts that discrepancies regarding the method of notification of the fire between the parties were revealed at those examination proceedings. Specifically, the Plaintiffs contradicted each other's testimony regarding who called what cell phone when. Consequently, ANPAC requested that the Plaintiffs execute and return Authorization to Obtain Information forms in late June. In July, ANPAC tendered a check to the Plaintiffs' mortgage lender in full satisfaction of the mortgage on their dwelling. ANPAC additionally advanced a check to the insureds in the amount of $1,000 during July. Additional forms were sent to Plaintiffs' counsel and same were returned on August 4, 2005.

ANPAC contends that throughout the months of August, September, October, and specifically November 3, 7, 18, and 23, ANPAC attempted to obtain the official cellular phone records from Plaintiffs for the surrounding dates and date of the fire. Plaintiffs did provide, on November 23, 2005, in correspondence to ANPAC's counsel, a copy of what appears to be unmarked cellular phone records. The records have no identifying markings or company name which would indicate its official status as the telephone records. Moreover, ANPAC responded to Plaintiffs' correspondence by letter and facsimile dated November 29, 2005, that the documentation provided misidentified phone numbers, gave no indication as to which cellular phone bill pertained to which party, failed to list any numbers of calls made for four days around the time of the fire,

contained listings of the wrong numbers, and failed to include the Jones' daughter's cellular phone records. Moreover, ANPAC's counsel offered to meet the parties at the cellular telephone company to receive copies of the cell phone records at the same time if correction was too burdensome.

On January 9, 2006, the correspondence regarding the incomplete cellular phone records from ANPAC's counsel was resent after the Plaintiffs' counsel intimated it had not been received. ANPAC wrote again on January 19, 2006, requesting a status report on the authenticated cellular phone records. When no reply was received, another correspondence was issued on January 31, 2006, outlining ANPAC's inability to secure the authenticated phone records from Cellular South or the Plaintiffs and requesting that the cellular phone records be produced within ten (10) days.

On February 27, 2006, exactly one (1) year from the date of the fire, Plaintiffs filed an action in the Circuit Court of Bolivar County against ANPAC and the insuring agent and agency. Plaintiffs allege five causes of action against the Defendant: negligence, negligent misrepresentation, bad faith, breach of contract, and gross negligence. The case was removed to the Northern District of Mississippi based on diversity of citizenship between the parties.

## Summary Judgment Law and Analysis

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548; Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The Defendant asserts that ANPAC is entitled to rescind the Plaintiffs' policy because Roosevelt Jones materially misrepresented that no member of his household had been convicted of a felony. Alternatively, Defendants assert that Plaintiffs' breach of the Concealment or Fraud Condition of the policy issued would allow recission of the policy. ANPAC contends that this material misrepresentation entitles them to summary judgment as to all Plaintiffs' claims. ANPAC otherwise maintains that it is entitled to partial summary judgment as to the Plaintiffs' bad faith, breach of contract, extracontractual damages, negligence, negligent misrepresentation, and gross negligence claims.

(a) Material Misrepresentation

Under Mississippi law, misstatements of material fact in an application for insurance provide grounds for declaring a policy issued in reliance thereon void *ab initio*. Dukes v. South Carolina Insurance Co., 590 F. Supp. 1166, 1168-69 (S.D. Miss. 1984), *aff'd* 770 F.2d 545 (5th Cir. 1985); see also Colonial Life & Accident Insurance Co. v. Cook, 374 So. 2d 1288, 1292 (Miss. 1979); Tolar

v. Bankers Trust Savings & Loan Ass'n, 363 So. 2d 732, 735 (Miss. 1978); Prudential Insurance Co. of America v. Estate of Russell, 274 So. 2d 113, 116 (Miss. 1973). "To establish that, as a matter of law, a material misrepresentation has been made in an insurance application, (1) it must contain answers that are false, incomplete, or misleading, *and* (2) the false, incomplete, or misleading answers must be material to the risk insured against or contemplated by the policy." Carroll v. Metropolitan Ins. & Annuity Co., 166 F.3d 802, 805 (5th Cir. 1999) (citing § 83-9-11(3) (1998); Prudential Ins. Co. v. Russell, 274 So. 2d 113, 116 (Miss. 1973)). A misrepresentation is material if knowledge of the true facts would have influenced a prudent insurer in determining whether to accept the risk. Nationwide Mut. Fire Ins. Co. v. Dungan, 634 F. Supp. 674, 682 (S. D. Miss. 1986) (citing 45 C.J.S. 595(3), pp. 406-07). Materiality is judged at the time of the misrepresentation, Edmiston v. Schellenger, 343 So. 2d 465, 467 (Miss. 1977), and the insurance company bears the burden of showing a right to rescind by clear and convincing evidence. Gardner v. Wilkinson, 643 F.2d 1135, 1136 n.3 (5th Cir. 1981); Pedersen v. Chrysler Life Ins. Co., 677 F. Supp. 472, 474 (N.D. Miss. 1988).

ANPAC has presented evidence that Roosevelt Jones denied being convicted of a felony on his application form, yet did have a burglary conviction in 1988. In his examination under oath, Jones was asked whether he had ever been arrested for anything other than an incident in which the charges were later dropped, and he answered, "Never." Further, when asked whether he had ever been convicted of any other crime, Jones stated "no." When confronted about the prior burglary conviction, Jones stated that he was surprised ANPAC found that charge, and he assumed that charge was off his record. Therefore, it is undisputed that a misrepresentation was made on the Plaintiffs' insurance application form.

ANPAC attached to its motion for summary judgment the affidavit of Kirby McKenzie, an ANPAC underwriter, who avers, "If the felony conviction had been disclosed on the applications, American National Property and Casualty Company's underwriting department would not have approved the risk . . ." Moreover, on the application form in bold print, under the question of whether any members of the household had been convicted of a felony, are the words, "**If yes, do not bind.**" The application additionally notes, "May submit a Trial Application with conviction date, type and description."

In order to rescind the insurance policy, the misrepresentation must be "material to the risk to be undertaken." Nichols v. Shelter Life Ins. Co., 923 F.2d 1158, 1164 (5th Cir. 1991). Although Kirby McKenzie avers that the application would have been denied, the application itself intimates that the conviction disclosed may be reviewed prior to acceptance.

The Court finds that a genuine issue of material fact exists as to whether Roosevelt Jones' misrepresentation of felony convictions was in fact, material. As our summary judgment practice mandates, the court does not purport to resolve disputes of this nature at this state of the litigation. "[F]indings involving material facts genuinely in dispute are reserved to the finder of fact, whether judge or jury, at the trial stage of such proceedings." Carroll v. Metro. Ins. & Annuity Co., 166 F.3d 802, 808 (5th Cir. 1999) (reversing a district court's grant of summary judgment where plaintiff sufficiently proved a genuine issue of material fact existed as to whether her misrepresentation was material to the insurer's risk). Accordingly, ANPAC's motion for summary judgment as to this claim and their request for rescission of the contract is denied.

<u>(b) Breach of Concealment Clause</u>

ANPAC next contends that summary judgment is appropriate based on the Plaintiffs' breach

of the Concealment or Fraud Condition clause.  The policy contains the following language:

> **2. Concealment or Fraud**.  This entire policy shall be void if, whether before or after a loss, any **insured** has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of any **insured** therein, or in case of any fraud or false swearing by any **insured** relating thereto.

ANPAC, Mississippi Special Homeowners Policy, p. 15.

Under Mississippi law, an insurance company seeking to defeat a policy on the basis of a "concealment" clause of the type involved in this case must establish that statements made by the insured were 1) false and 2) material and 3) knowingly and willfully made. Clark v. Aetna Cas. & Surety Co., 607 F. Supp. 63, 66 (S.D. Miss. 1985) *aff'd*, 778 F.2d 242 (5th Cir. 1985).  The purpose of requiring truthful answers from the insured is to enable the company to obtain all facts "material" to their rights to enable them to decide on their obligations and "to protect them[selves] against false claims." Edmiston, 343 So.2d at 466-67. Here, fulfillment of the first element is not in dispute. Plaintiffs have conceded that Roosevelt Jones' felony conviction was not disclosed on the application form.  Moreover, Roosevelt Jones' examination under oath record reveals that the falsehood was knowingly and willfully made.  Thus, the only question presented is whether the false statement was "material."

As noted above, the Plaintiffs have presented a genuine issue of material fact as to the materiality of the representation.  Thus, Defendants' motion for summary judgment as to the concealment and fraud clause is denied.

(c) Partial Summary Judgment

Defendants alternatively assert that ANPAC is entitled to summary judgment as to the Plaintiffs' bad faith, negligence, negligent misrepresentation, gross negligence and breach of contract

claims, as well as Plaintiff's request for extracontractual damages.

*i. Bad Faith Claim and Extracontractual Damages*

ANPAC contends that Plaintiffs' claims for bad faith based on an alleged unreasonable delay must be dismissed because ANPAC was entitled to investigate the Plaintiffs' claim, especially since the loss was caused by an intentionally set incendiary fire.

In order to prevail in a bad faith claim against an insurer, a plaintiff must show that the insurer lacked an arguable or legitimate basis for denying a claim, or that the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights. Liberty Mutual Life Insurance Company v. McKneely, 862 So. 2d 530, 533 (Miss. 2003); State Farm Mutual Automobile Insurance Company v. Grimes, 722 So. 2d 637, 641 (Miss. 1998). Bad faith requires a showing of more than bad judgment or negligence; rather, "bad faith" implies some conscious wrongdoing "because of dishonest purpose or moral obliquity." Bailey v. Bailey, 724 So. 2d 335, 338 (Miss. 1998).

Plaintiffs offer and rely on two cases as to this issue throughout their response to ANPAC's motion for summary judgment: Travelers Indemnity Co. v. Wetherbee, 368 So. 2d 829 (Miss. 1979), and Reece v. State Farm Fire & Cas. Co., 684 F. Supp. 140 (N.D. Miss. 1987). Plaintiffs cite Wetherbee for the contention that the insurers' eight month delay for payment was held to be motivated by economic gain by the Mississippi Supreme Court, and thus subject to punitive damages. The facts of the Wetherbee case, however, are clearly distinguishable from the case *sub judice*.

On February 14, 1976, fire severely damaged Carl and Lula Bell Wetherbee's dwelling. 368 So. 2d at 830. The Wetherbees reported the damage to their insurance carrier, which sent a claims

representative, Barry Wallace, to investigate within a day of the report. Id. During the claims representative's investigation, the fire marshal apprised Wallace that the Wetherbee's were suspected of arson as to their dwelling and another structure. Id. Thereafter, the insurer cancelled the policy and declined payment to the Wetherbee's during the course of the fire marshal's investigation. Id.

Over the next year, the insurer and the Wetherbees attempted to negotiate a settlement. Id. at 830-31. The facts in evidence proved that the insurer was aware of the Wetherbee's financial difficulty. Specifically, the Wetherbees were having a hard time making the mortgage payment on the burned dwelling to prevent its foreclosure. The evidence proved that the insurer withheld payment in an effort to force a lower settlement. Id. at 831, 833. The Wetherbees were eventually exonerated of the arson charge. Id. at 831.

Most pertinent here is the fact that the Mississippi Supreme Court held that the insurer was reasonable in withholding all payments during the arson investigation. Id. at 834. In upholding the jury's punitive damages award, the Court noted, "we do not know why Travelers violated its [Loss Payment] contract by not paying the contents coverage, but it did, leaving a strong inference that it was for economic gain." Id. at 835. Further, the court opined, "we can fathom no other reason and **none has been offered**." Id. (emphasis added).

Here, the Jones are under a continuing arson investigation by ANPAC. ANPAC has paid $56,398 in satisfaction of the mortgage held by the Jones on their dwelling and tendered a $1,000 advance check to the Jones. Moreover, ANPAC has offered a reason for delaying payment - failure to cooperate by the Jones in procuring cellular phone records - and no inference of improper reason has been raised by the Plaintiffs.

Plaintiffs additionally cite Reece for the position that where the insurer breaches its "Loss

Payment" provision, extracontractual damages are available. In <u>Reece</u>, the insurer denied coverage of the plaintiff's claim based on intentional burning of the dwelling. 684 F. Supp. at 147. The insurer, State Farm, had a "Loss Payment" provision in its policy providing that payment or denial would be made within sixty days after proof of loss was submitted to the insurer. <u>Id</u>. at 148. State Farm notified the plaintiff that his claim was not denied, but that State Farm was declining to make payment within that sixty days; however, State Farm issued a denial three months later. <u>Id</u>. at 147. State Farm claimed it did not deny the claim within sixty days due to its ongoing investigation as the plaintiffs' second examination under oath was scheduled outside the sixty days. <u>Id</u>. at 150. The Court held that "State Farm was able to but did not complete its investigation within 60 days of the receipt of the insureds' proof of loss documents" because State Farm had not proved that the second examination under oath produced any new or additional evidence that was not available the first sixty days. <u>Id</u>.

The trial court denied State Farm's partial summary judgment motion as to extracontractual damages related to the alleged breach of the "Loss Payment" insurance policy provision. <u>Id</u>. at 152. However, the court noted, "the evidence of arson already constituted an arguable reason for State Farm to deny the Reeces' claim and shielded State Farm from liability for punitive damages for denying the claim." <u>Id</u>. at 150. Further, the court held there was "no absolute contractual obligation on the insurer to complete *every* investigation within 60 days." <u>Id</u>. at 151. Therefore, on the basis of Plaintiffs' main authorities, an arson investigation constitutes an arguable reason to delay payment and there is no obligation to complete investigations within a contractual provision time limit if the insurer has a legitimate reason.

This Court finds persuasive the following authorities: <u>Caldwell v. Alfa Ins. Co.</u>, 686 So. 2d

1092 (Miss. 1996), and Tutor v. Ranger Ins. Co., 804 F.2d 1395 (5th Cir. 1986).  In Caldwell, the

plaintiff filed suit against his insurer, Alfa Insurance, alleging bad faith for unreasonable delay in

tendering payment for his son's death in a car accident with a drunk driver.  686 So. 2d at 1093.

Although the accident occurred on October 20, 1990, Alfa was not notified until February 15, 1991

and promptly began an investigation.  Id.  Caldwell filed suit on April 1, 1991, while Alfa continued

its investigation and tendered benefits to Caldwell on May 28, 1991. Id.

The trial court granted summary judgment in favor of the insurer based on the following: "the

lack of cooperation Alfa had from the witnesses and other insurance companies; the multiplicity of

insurance coverage and coverage issues; the failure of Caldwell to return Alfa's calls or help gather

the standard information Alfa had indicated was necessary to complete the investigation; and the

intervening bad faith suit for punitive damages with its concomitant legal questions and chilling

effect." Id. at 1094.  The Mississippi Supreme Court affirmed the trial court's grant of summary

judgment.

The Court noted that under Mississippi law, a duty is imposed on insurers to "conduct a

reasonably prompt investigation of all relevant facts." Id. at 1097 (citing Bankers Life and Cas. Co.

v. Crenshaw, 483 So. 2d 254, 276 (Miss. 1985)).  The Court found that Alfa's legitimate reason for

the delay - a continuing investigation - was not rebutted by Caldwell. Specifically, the Court held

that "Caldwell bears the burden to demonstrate that Alfa had no arguable reason for denying

coverage."  Id. (citing Polk v. Dixie Ins. Co., 897 F.2d 1346, 1350 (5th Cir. 1990)).

In Tutor, the Fifth Circuit had occasion to address the issue of whether a delayed

investigation by an insurer amounted to gross negligence and thus created a jury question as to

punitive damages. 804 F.2d 1395 (5th Cir. 1986).  Ranger Insurance Company appealed the district

court's refusal to grant a directed verdict or judgment notwithstanding the verdict on the insured's claim for compensatory and punitive damages arising out of an alleged breach of insurance contract. 804 F.2d at 1395.

The Fifth Circuit reversed the Northern District of Mississippi. The Court stated, "Ranger never denied the claim but instead only investigated the claim, determined it to be valid, disputed the valuation of the skidder and delayed payment while these issues were resolved." Id. at 1398. The Court noted that

> the Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment. See, e.g., Aetna Casualty & Sur. Co. v. Day, 487 So. 2d 830, 832-34 (Miss. 1986) (no punitive damages in case of dispute in coverage and delay in payment); State Farm Mut. Auto. Ins. Co. v. Roberts, 379 So. 2d 321, 322 (Miss. 1980) (award of punitive damages improper when insurer legitimately disputes the amount due under the policy); see also Bellefonte Ins. Co. v. Griffin, 358 So. 2d 387, 391 (Miss. 1978) (dispute over method of determining amount due under the policy did not entitle insured to punitive damages).

Id. at 1399.

The Court found that Tutor was not entitled to a jury instruction on punitive damages, and that the district court erred in refusing to grant Ranger's motions for a directed verdict and j.n.o.v. on that issue. The Court specifically stated, "We think that this case initially involved a reasonable inquiry into the validity of the claim and a subsequent good faith dispute over the cash value of the log skidder." Id.

In this case, the Plaintiffs fail to show conscious wrongdoing or any deviation from right thinking on the part of ANPAC. ANPAC's concern at the onset of this matter was who started the incendiary fire which destroyed the Plaintiffs' home. ANPAC made repeated attempts to ascertain the facts surrounding this claim. A request by ANPAC for Plaintiffs' cellular phone records has

been unanswered as of this day. Defendant attached to its' motion numerous correspondences from ANPAC requesting that the Plaintiffs supply them with authenticated cellular phone records.

Section I - Conditions of the Jones' Homeowners' Policy states that in case of a loss, the insured has a duty to "provide [ANPAC] with records and documents [ANPAC] request[s] and permit [ANPAC] to make copies." Based on the correspondence attached to the Defendants' motion for summary judgment, over the course of six months, Plaintiffs were continually requested to turn over authenticated cellular phone records to ANPAC.

The Plaintiffs do not explain why the cellular phone records were not provided, or refute that the records were not produced. However, Plaintiffs assert that because ANPAC has not communicated a decision in writing within sixty (60) days of receipt of their Revised Proof of Loss, ANPAC has breached its own policy provisions and has, thus, effectuated a constructive denial of claim. This argument is unfounded. As the Fifth Circuit recognized in <u>Caldwell</u> and <u>Tutor</u>, punitive damages are not available where the insurer has a reasonable basis for investigation and the insured has failed to rebut the same.

Even when an insurance carrier denies or delays payment of a valid claim, when based on a reasonable cause, bad faith will not lie and no predicate exists for a punitive damages claim. <u>Mutual Life Insurance Company v. Estate of Wesson</u>, 517 So.2d 521, 528 (Miss. 1987). The evidence recounted above by this court shows clearly that ANPAC's delay in paying the Plaintiffs' claim is based wholly on a legitimate provision of its policy, and not upon some conscious wrongdoing such as an unwarranted predisposition to deny claims. Accordingly, as there is no evidence in the record that ANPAC has denied Plaintiffs' claim, the Plaintiffs' bad faith claim is dismissed.

ANPAC additionally asserts that summary judgment should be granted on the extra-contractual damages claim. ANPAC notes that Mississippi law provides that an insurance company is not subject to extra-contractual damages of any kind unless that insurance company takes a position without an arguable basis. Citing Grimes v. State Farm Mut. Auto. Ins. Co., 722 So. 2d 637 (Miss. 1998). Because, ANPAC contends, the delay in gathering materials necessary for disposition of the Jones' claim is the Plaintiffs' fault, ANPAC had an arguable reason for that delay.

The absence of an arguable reason, however, does not lead inexorably to an assessment of punitive damages. As stated by the Supreme Court of Mississippi, "the substantive test for awarding punitive damages . . . requires the plaintiff to show some wilful or malicious wrong of the gross or reckless disregard for the rights of others. Weems v. American Sec. Ins. Co., 486 So. 2d 1222, 1226-1227 (Miss. 1986) (citing National Life Insurance Co. v. Miller, 484 So. 2d 329 (Miss. 1985); Reserve Life Insurance Company v. McGee, 444 So.2d 803, 808-09 (Miss. 1983); Travelers Indemnity Co. v. Wetherbee, 368 So. 2d 829, 835 (Miss. 1979)). The Plaintiffs have failed to present any evidence of malice or reckless disregard on the part of ANPAC. Furthermore, Plaintiffs have failed to allege any genuine issue of material fact as to ANPAC's willfulness or malice. Therefore, Defendant's motion for summary judgment as to these claims is granted.

*ii. Negligence, Negligent Misrepresentation, and Gross Negligence*

The Defendants also assert that summary judgment should be granted as to Plaintiffs' negligence, negligent misrepresentation, and gross negligence claims.

In their complaint, the Plaintiffs specifically allege that ANPAC breached its "non-delegable duty to Plaintiffs[] to pay all required insurance proceeds." Mississippi law recognizes an insurer's right to reasonable investigation of all relevant facts. See Crenshaw, 483 So. 2d at 276. Moreover,

14

Plaintiffs contend that ANPAC breached its duty by failing to pay insurance proceeds within a reasonable time. As noted above, ANPAC has not denied Plaintiffs' claim; it has delayed payment pending its arson investigation. In the previous section, the Court found that ANPAC's investigation was not in conscious disregard for Plaintiffs; however, that does not imply that the investigation was reasonable. ANPAC has now investigated the Plaintiffs' claim for over three years. There exists a jury question as to whether ANPAC has breached its duty in its failure to reasonably investigate or by delaying payment of the insurance claim more than three years.

Accordingly, Plaintiffs have alleged disputed issues of material fact such that summary judgment is not appropriate as to this claim. Thus, ANPAC's request for summary judgment as to Plaintiffs' negligence claim is denied.

Count III of Plaintiffs' complaint asserts that Defendants negligently misrepresented to Plaintiffs that in the event of a loss or damage to their property, ANPAC's policy would pay insurance benefits. Further, Plaintiffs' claim that Defendants never intended to pay the insurance proceeds, and as a result, Plaintiffs have suffered damage.

Under Mississippi Law, in order to recover under a negligent misrepresentation claim, a party must prove by a preponderance of the evidence that: (1) there was a misrepresentation (or omission) concerning a past or present fact; (2) the misrepresentation was material; (3) the misrepresentation was the product of negligence, i.e., the person failed to exercise reasonable care; (4) they reasonably relied on the misrepresentation; and (5) they suffered damages as a direct and proximate result of the reliance. Spragins v. Sunburst Bank, 605 So. 2d 777, 780 (Miss. 1992).

As noted above, a genuine issue of material fact as to materiality and negligence has been put forth; therefore, Plaintiffs have produced enough evidence of a genuine issue of material fact as to

the negligent misrepresentation claim. Accordingly, Defendant's motion for summary judgment as to the negligent misrepresentation claim is denied.

Plaintiff also alleges a breach of contract action against the Defendants for failure to pay insurance proceeds. Whether ANPAC should have already paid or denied the Plaintiffs' claim or whether ANPAC breached the insurance policy at all is an issue for the jury. Thus, ANPAC's motion for summary judgment as to Plaintiffs' breach of contract claim is denied as well.

As Plaintiffs' inability to recover punitive damages has been discussed above, the court finds no need to readdress these concerns as to Plaintiffs' gross negligence claim. Accordingly, ANPAC's motion for summary judgment as to that claim is granted.

### Motion to Strike Analysis

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the United States Supreme Court set out the criteria that district courts are to follow in assessing challenged expert testimony offered under Federal Rules of Evidence 702. As the Court stated, "Proposed testimony must be supported by appropriate validation -- i.e., 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertains to 'scientific knowledge' establishes a standard of evidentiary reliability." Id. at 590. Accordingly, the Supreme Court has held that a trial court has a duty to screen expert testimony for both its relevance and reliability. Id. An expert, to state an opinion, must have a "reliable basis in the knowledge and experience of his discipline." Id. at 592. Thus, this court must determine that the reasoning and methodology underlying the testimony is scientifically valid and that the reasoning and methodology can properly be applied to the facts in issue. Id. at 592-93. Under Rule 703, an expert must base his opinion upon facts and data of a type reasonably relied upon by experts in the field. Id. at 595.

16

Although the Supreme Court has suggested that the <u>Daubert</u> standard is a flexible one, the district court should "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999); <u>Daubert</u>, 509 U.S. at 592, 113 S. Ct. 2786; <u>Vogler v. Blackmore</u>, 352 F.3d 150 (5th Cir. 2003).

<u>Daubert</u> also instructs the trial court on the procedural mechanics for resolving disputes relative to the expert's competence to testify under the standards enunciated in that opinion. That is, <u>Daubert</u> directs that the district court determine admissibility under Rule 702 by following the directions provided in Federal Rule of Evidence 104(a). Rule 104(a) requires the trial judge to conduct preliminary fact-finding, to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." <u>Daubert</u>, 509 U.S. at 593, 113 S. Ct. 2786.

The party sponsoring the expert testimony has the burden of showing that the expert's findings and conclusions are based upon the scientific method and, therefore, are reliable. "This requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." <u>Moore v. Ashland Chemical, Inc.</u>, 151 F.3d 269, 276 (5th Cir. 1998). "The proponent[s] need not prove to the judge that the expert's opinion is correct, but [they] must prove by a preponderance of the evidence that the testimony is reliable." <u>Id</u>.

ANPAC asserts that Plaintiff's expert, Donald Dinsmore, should be stricken as a witness and

prohibited from testifying in this case or any other case as an insurance expert. The Plaintiffs seek to introduce Dinsmore as an expert in claims adjusting. Dinsmore has more than twenty-six years experience as a claims adjuster. He has further been involved in insurance consulting for the past ten years. Federal Rule of Evidence 702 provides, in pertinent part, that if specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness may testify as an expert if "the testimony is based on sufficient facts or data." The court finds that Donald Dinsmore is fully qualified to testify as an expert in insurance claims adjusting based on his resume and curriculum vitae.

ANPAC offers four reasons to prevent or limit Dinsmore's testimony at trial: (1) he relies on demonstrably incorrect facts; (2) his testimony exceeds the claims pled by Plaintiff in the litigation; (3) he failed to disclose specifically reference materials used in formulating his opinions; and (4) his opinions do not pass muster under Rule 702. The Defendant contends that Dinsmore's "opinions" are nothing more than impermissible legal conclusions, and as such, should be struck. See Snap-Drape, Inc. v. C.I.R., 98 F.3d 194, 198 (5th Cir. 1996) (noting that Rule 704 does not allow experts to render conclusions of law).

The preliminary expert report of Donald Dinsmore contains the following opinions and the court's determination as to whether they will be allowed or not:

1. The Plaintiffs are unsophisticated insureds. The jury can determine this fact without an expert. Therefore, Dinsmore will not be permitted to testify as to this fact.

2. The insurance policy includes both property and liability coverages written to insure Mississippi property, therefore, Mississippi law governs the contract. The court will instruct the jury on the applicable law. There is no need for Dinsmore to opine on this.

3.  The property and casualty insurance industry has standards for the handling of insurance claims.  While the court acknowledges that there are model codes for the insurance industry, no testimony of code violations will be tolerated as the National Association of Insurance Commissioners model code specifically states that nothing in that Code should be construed as creating or implying a private cause of action for violating those regulations.  Accordingly, Dinsmore is precluded from testifying as to the model codes and their implications here.

4.  ANPAC owed the policy limits for the dwelling.  Dinsmore may testify as to the policy limits; however, he cannot testify or state a legal opinion as to the "valued policy law" for Mississippi.

5.  The Plaintiffs fulfilled all the policy conditions required to perfect their claim.  This "opinion" is a jury question.  Therefore, Dinsmore is prohibited from offering testimony as to this claim.

6.  Adjusters have four obligations: to investigate, evaluate, communicate and settle.

a.  Adjuster Michael Davis properly evaluated the loss of the Jones' dwelling.

b.  Staff Adjuster Lisa Spurlin recognized or should have recognized coverage questions and did not act properly or in a reasonable manner.  Moreover, "Spurlin did not communicate properly nor reasonably."

c.  Special Investigation Unit Adjuster Mary Turner recognized or should have recognized coverage questions.  Turner "did not properly communicate with Jones' by insurance industry standards" nor did she "settle[] the claim properly or reasonably by insurance industry standards."

d. Outside Counsel Adjuster Jennifer Lee "misrepresented claim procedures" and did

not "properly nor reasonably communicate."

Dinsmore is not precluded from testifying as to the standard of conduct and explaining the conduct of the persons involved in the Plaintiffs' claim. He is not permitted to draw conclusions from those standards and explanations of conduct, as this is a determination for the jury.

7. There is a standard insurance industry procedure for handling of claims questions of coverage. Dinsmore then outlines those steps as recognition, notice, investigation, internal review, decision, communicate position, and address issues separately. This testimony will be permitted as long as no Code standards are used as evidence of violations.

8. ANPAC did not honor its promise to pay under the subject insurance policy. "The documents provided did not provide *any* reason expressed by ANPAC for the failure to pay in a reasonable manner." Dinsmore will not be allowed to testify as to this opinion as it embraces the ultimate fact and that is reserved for the jury's consideration.

9. "ANPAC did not honor its promise of good faith and fair dealing to Jones. Specifically, ANPAC did not honor the promise of security and peace-of-mind commonly found and recognized in insurance policies." This claim was not pled in the Plaintiffs' complaint. Therefore, testimony as to this cause of action is outside the Plaintiffs' suit and will not be permitted.

10. The insurance claim at issue in this suit was a first party claim. This opinion appears to be related to the good faith and fair dealing opinion. Dinsmore is precluded from testifying as to any ultimate fact and any testimony outside the Plaintiffs' pleadings will not be allowed.

To the extent that Donald Dinsmore asserts legal conclusions and conclusions as to the ultimate fact, his expert testimony is be struck. As numbered above, the portions which the court strikes now are: 1, 2, 3, 5, 8, 9, 10. Dinsmore's expert report is struck as to his opinion on

Mississippi's "valued policy law." Accordingly, ANPAC's motion to strike the expert's report will be granted in part and denied in part, and the motion to strike Plaintiffs' designation of expert will be denied.

### Plaintiff's Motion to Strike Third Supplemental Pre-Discovery Disclosures [87] and Cross Motion for Summary Judgment [90]

By case management order [29] and extension of deadlines granted on June 13, 2007, dispositive motions in this case were due July 14, 2007. Thus, Plaintiff's Motion to Strike Third Supplemental Pre-Discovery Disclosures [87], filed September 4, 2007, and Plaintiff's Cross-Motion for Summary Judgment [90], filed September 6, 2007, are denied as being untimely. Also, Plaintiff's Motion to Strike Notice of Service of ANPAC's Third Supplemental Pre-Discovery Disclosures [97], filed September 20, 2007, is struck for the same reason.

*Conclusion*

Defendants' Motion for Summary Judgment as to Plaintiffs' claims is granted in part and denied in part. The Plaintiffs have put forth enough evidence to create a genuine issue of material fact as to their negligence, negligent misrepresentation, and breach of contract claims.

Defendant's Motion to Strike Plaintiff's Designation of Expert is hereby denied. Defendant's Motion to Strike Expert Testimony is granted in part and denied in part.

A separate order shall issue forthwith this day.

SO ORDERED, this the __16th__ day of May, 2008.

**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**